Charles A. Banker, III
405 Main Street, Suite 910
Houston, Texas 77002
Telephone: (713) 227-4100
Facsimile: (713) 222-2468
E-Mail: krangekwrono@yahoo.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **Plaintiff** | § | |
| | § | **CRIM.NO. H-08-146** |
| | § | |
| **ELISA IDALIA CASTILLO, et al.** | § | |
| **Defendants** | § | |

**SENTENCING MEMORANDUM OF ELISA IDALIA CASTILLO**

## TABLE OF CONTENTS

I. OVERVIEW . . . . . . . . 1

II. SENTENCING AFTER RECENT CHANGES BY THE SUPREME COURT OF THE UNITED STATES . . . . . . . . 2-4

A. The Court may Tailor a Sentence to a Particular Defendant . . . . . . 2
B. *Gall* Explains How Sentencing Should Proceed . . . . . . . . 2-3
C. Requirements of 18 U.S.C. §3553(a) . . . . . . . . 3
D. There is No Presumption that a Guideline Sentence Should Apply . 3-4
E. No Rigid Formula To Be Applied . . . . . . . . 4

III. GROUNDS FOR GRANTING A NON-GUIDELINE SENTENCE . . 4-7
A. Castillo's Naivete is Well Documented Both Pre-and Post-Conviction . 4-5-6
B. Castillo's Lack of Education . . . . . . . . 6
C. Castillo's Lack of Prior Criminal History . . . . . . . . 6
D. Castillo's Prior Work History . . . . . . . . 6-7
E. Castillo's Modest Life Style . . . . . . . . 7

CONCLUSION . . . . . . . . 7-8

PRAYER . . . . . . . . 8

APPENDIX

# TABLE OF AUTHORITIES

**CASES**

*Blakely v. Washington*, 542 U.S. 296 (2004) 2

*Gall v. United States*, 128 S. Ct. 586 (2007) 2,3

*Rita v. United States*, 127 S. Ct. 2456 (2007) 4

*United States v. Booker*, 543 U.S. 220 (2005) 2

*United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Circuit 2008) 3

**STATUTES**

18 U.S.C. § 3553 (a) 1,2,3,4

**UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. § 5K2.0 1,4

**TO THE HONORABLE SIMEON LAKE, UNITED STATES DISTRICT JUDGE:|**

COMES NOW, ELISA IDALIA CASTILLO, ("Castillo") by and through her attorney of record Charles A. Banker, III, and hereby files this Sentencing Memorandum in anticipation of her upcoming sentencing before the Court.

The advisory sentencing guideline calculation contained in the Presentence Report ("PSR") recommends an advisory sentencing of life imprisonment. Defendant requests this Honorable Court to consider a sentence "variance" in this case pursuant to 18 U.S.C. §3553(a).

## I.   OVERVIEW

Castillo submits this Sentencing Memorandum requesting the Court to grant her a sentence of ten (10) to fifteen (15) years' imprisonment, and presents factors for the Court to find that such a sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing as set forth in 18 U.S.C. §3553(a).

Castillo asks this Court to depart downward and grant a non-Guideline sentence (a sentence "variance") in this case based on the following factors: (1) Castillo's offense conduct is overstated by the guidelines applicable to her case; (2) Castillo's age and lack of significant criminal history; (3) Castillo's naïveté and high susceptibility to manipulation; (4) the low probability that Castillo will re-offend; and (5) a combination of factors under U.S.S.G §5K2.0 and 18 U.S.C. §3553(a).

## II. SENTENCING AFTER RECENT CHANGES BY THE SUPREME COURT OF THE UNITED STATES

### A. The Court May Taylor a Sentence to a Particular Defendant

In *United States v. Booker*, 543 U.S. 220 (2005, a majority of the Supreme Court held that *Blakely v. Washington*, 542 U.S. 296 (2004) applied to the federal sentencing guidelines, and that the Sixth Amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to increased prison time. *Id.* At 244. As a remedy, a different majority of the Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory. *Id.* At 244-45. The remedial majority held that district courts must still consider the guideline range, but must also consider the goals and factors set forth in 18 U.S.C. §3553(a). *Id.* The *Booker* Court held that sentences imposed by district courts "must be reasonable given the factors set forth in the Act." *Id.* At 260-61. The Court thus restored a district court's ability to fashion a sentence tailored to the individual circumstances of the case about each individual defendant. Recent decisions by the Supreme Court have affirmed the broad sentencing discretion district judges possess under *Booker* and have held that they may impose non-guideline sentences by either departing under the Guidelines or by applying the factors contained in §3553(a).

### B. *Gall* Explains How Sentencing Should Proceed

Most recently, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court explained how sentencing in the district court should proceed. First, a district court must accurately calculate the applicable Guideline range. *Id.* at 596. After considering the correct Guideline range, including upward or downward departures, the district court must then consider all of the § 3553(a) factors to determine the appropriate sentence. *Id.* The district court "must make an individualized assessment based on the facts presented." *Id.* at 597. If the district court

determines that a sentence outside the Guidelines is most appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id. See also United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008). Further, *Gall* indicated that factors disfavored by the Sentencing Commission may otherwise be relied on by the district court in fashioning an appropriate sentence under § 3553(a). *Id.* at 602.

**C. Requirements of 18 U.S.C. § 3553(a)**

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." These purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (4) any pertinent policy statements issued by the Sentencing Commissions; and (5) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

**D. There Is No Presumption that a Guideline Sentence Should Apply**

Further, the Supreme Court has held that a guideline sentence may, on appeal, be presumed reasonable, but that the presumption of reasonableness "applies only on appellate review." *Rita v. United States*, 127 S. Ct. 2456 (2007). The sentencing court "does not enjoy the

benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 2465. Instead, the sentencing court, after determining the guideline range, may decide that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or *perhaps because the case warrants a different sentence regardless*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

*Id.* (emphasis added). The *Rita* Court also was careful to note that, although the courts of appeal may presume reasonable a "within-guideline" sentence, they may not presume a non-guideline sentence to be unreasonable. *Id.* at 2467.

**E. No Rigid Formula To Be Applied**

Finally, the *Gall* Court explicitly invalidated the use of mathematical calculations in regard to the extent of a variance from the Guidelines. The Court held, "[w]e also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 128 S. Ct. at 595.

## III. GROUNDS FOR GRANTING A NON-GUIDELINE SENTENCE

Pursuant to the Sentencing Guidelines and 18 U.S.C. § 3553(a), Castillo respectfully asks this Court to depart downward and grant a non-Guideline sentence in this case based on the evidence presented herein and as will be presented at the sentencing hearing.

### A. Castillo's Naïveté is Well Documented Both Pre-and Post-Conviction

During the trial of Castillo, it was well documented by every one of Castillo's witnesses who testified on her behalf at trial, that Castillo is highly naïve, easily taken advantage of by

anyone who approaches her, and easily misled by anyone with an "agenda" who seeks to manipulate her. Castillo obtained the DOT classification at the request of Patricio Reynoso Galaviz. Castillo was introduced to Galaviz by her boyfriend, Martin Ovalle-Martinez. That Ovalle Martinez was an individual and co-defendant using Castillo's heretofore good name and business reputation to further the cause of insidious drug trafficking was well-established at trial. When Castillo was introduced to Patricio Reynoso Galaviz by her then boyfriend Ovalle as "a well-to-do businessman from Mexico," who was interested in investing in her business, she counted her good fortune for her business. She gladly placed the busses he paid for in cash in her name, and rented out her business name, "Lizma Tours," to Patricio Reynoso Galaviz and others [PSI 78]. Castillo's rationale for doing so was to prosper the business and continue to earn a moderate income for her family. She never thought that any illicit activities were transpiring.

All of Castillo's friends and family testified at her trial regarding how easily duped, naïve, and vulnerable Castillo is, and how she was regularly taken advantage of by the men in her life: First for six (6) years by Adan Ibarra (PSI 71), then for twenty-three (23) years with Jesus Cano, who regularly and consistently cheated on her. She never suspected him of this conduct until, after investing twenty-three (23) years into the relationship, she caught him with their baby sitter (PSI 70).

Finally, she met Martin Ovalle, the co-defendant, and despite her previous bad experiences with men, she trusted him completely, hung on his every word, and believed everything he said, even after she learned that he was and is currently legally married, with a wife and children in Mexico. She entered into a seven (7) year relationship with him (PSI 69).

Despite the outcome of the trial, Castillo still believed Ovalle-Martinez when he told Castillo that he knew nothing about the drug operation. It was her counsel, Charles A. Banker, III, who set her straight on that aspect and told her that Ovalle-Martinez confessed that he had

known about the illegal drug trafficking and money laundering which was going on the busses she had leased to the "co-conspirators." During that same attorney-client interview prior to the trial, Elisa Castillo made the comment regarding Ovalle to her counsel and his paralegal, "*He took care of me. I don't have a husband and I needed a man.*" Castillo appeared to be in deep denial that anyone – especially Ovalle, her boyfriend of seven (7) years – would take advantage of her in such a way. Castillo's logic and reasoning is that of about a fourteen (14) year old female who still believes in the type of relationships portrayed in *novellas* and Spanish soap operas. Even post-trial, Castillo refuses to accept that Ovalle-Martinez, Reynosa Galaviz, and others, would take advantage of her and use her name and her signature to traffic drugs and launder money in such a large scale international operation.

**B. Castillo's Lack of Education**

It is established in the PSR that Castillo had very little education, and only attended public school until the age of fourteen (14). She dropped out of school at the age of fourteen (14) to work and support her parents, brothers and sisters.

**C. Castillo's Lack of Prior Criminal History**

From the age of fourteen (14) until her current age of fifty-three (53), Castillo worked all her life in varying jobs. She never had any type of police record or legal problems until the instant case. No prior police record exists in Dallas, Texas, in Houston, Texas, or in her home town in Mexico with regard to Elisa Castillo.

**D. Castillo's Prior Work History**

Castillo began working at age fourteen (14) and never stopped working until her arrest at age fifty-three (53) (PSI 67). The numerous letters attached to this Sentencing Memorandum from her co-worker and family members attest to her hard work and the steady, reliable way in which she provided for her family. She began working at warehouses in Dallas, Texas, including

El Chico Warehouse and El Phoenix Warehouse, and as a security guard at a bowling alley (PSI 80). She also worked at Omega Optical in Dallas, Texas for a period of 23 years (PSI 79).

After moving to Houston, Texas Castillo began working at Lizma Tours as a ticket seller, ultimately becoming the owner of Lizma Tours on May 17, 2006. Her sole desire was to grow her business in a legitimate way, as confirmed by her honesty in maintaining a DOT registration and the registration of her business with the Harris County Clerk's office.

Upon the end of her incarceration, Castillo's desire is to work again to continue to provide for her children and grandchildren in her close-knit family (PSI 72).

**E. Castillo's Modest Lifestyle and Work Ethic**

Castillo maintained a modest bank account and lived in a home in Houston, Texas which only had an appraisal value of $55,636.00. She worked all her life, from the age of fourteen (14) to her current age of fifty-three (53) to help first her siblings, and then to maintain her children in her close-knit family, in Dallas, Texas, Houston, Texas, and in Mexico. After a thorough investigation, the United States Government found no large sums of money in Castillo's name, no hidden bank accounts, and no expensive personal vehicles, which is commensurate with someone who was easily duped into being involved in a drug conspiracy while at the same time not benefitting financially in any obvious manner.

## CONCLUSION

It is obvious from Castillo's modest lifestyle and steady, day to day work at her company that she did not earn a huge profit from the multi-kilogram, multi-million dollar scheme. The "warning bells" which should have sounded in the head of a reasonable, prudent, normal person simply were not triggered for Elisa Castillo when the Government's seizures of drugs and money began to transpire. She did not want to believe that she was being used in this manner.

Castillo had essentially "put on blinders" to the reality around her. Defendant believes that this factor and the others stated in this request would be grounds for a sentence variance under Title 18 §3553(a).

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Castillo prays that this Court will grant a downward departure or variance and sentence Castillo to ten (10) to fifteen (15) years of prison time, with the possibility for Parole, home detention and community service, and for all such other and further relief to which she is entitled.

Respectfully submitted,

/s/ Charles A. Banker, III

CHARLES A. BANKER, III
State Bar No. 01676780
Federal No. 8965
405 Main Street, Suite 910
Houston, Texas 77002

Counsel for Defendant ELISA IDALIA CASTILLO

## CERTIFICATE OF SERVICE

I hereby certify that on the **27th** day of **May, 2009**, a true and correct copy of the foregoing Motion was delivered to the office of the Assistant United States Attorney assigned to handle this case.

To: Assistant United States Attorney
Bryan Best
United States Attorney's Office
P.O. Box 61129
Houston, TX 77208

/s/______________________

CHARLES A. BANKER, III

# APPENDIX

## LETTERS FROM CO-WORKER AND FAMILY MEMBERS OF ELISA IDALIA CASTILLO

March 25, 2009

To whom it may concern;

My name is Michelle Erven and I have been a co-worker and long time friend of Elisa Castillo. We worked together at an optical company in the 1980's to early 1990's. She was a good mentor and always willing to share her knowledge of the business so people could better understand the business. She was willing to learn new tasks in order to better herself so she could provide for her family.

When she left the company and moved to another optical company we would keep in touch through the years via phone. We would talk about work and about our children and how big they were getting and how old we were feeling.

Elisa has only wanted the best for her family and friends. She is a trustful and honest person. To my knowledge Elisa would never do harm to any individual or anything illegal intentionally or knowingly.

If I can be of any other assistance please contact me.

Michelle Erven
1822 Autumndale Dr
Grapevine TX 76051
817-424-3191

To whom it may Concern May 18, 2008

Just want to state; that I've known Elisa Castillo for 26 years, and that she was married to my brother Jesus Cano that has passed away 6 months from now. And all this time that I've known Elisa Castillo she has been a hard working woman. She was a good wife to my brother, and a good mother to her Children and until this day. I have not know that she has done anything wrong. You might say that because she is my sister in law, I would be saying good things about her, but the only reason I say good things about her is because that's the only thing I've seen from her, and as a good Citizen of the United States I have no reasons to give false testomonys.

Sincerly

[signature]

7829 Scanlock
Houston Texas.

05/14/2008

To whom it may concern,

Elisa Castillo is my sister-in-law. I cherish her as a person and have profound respect for her. She has overcome obstacles that many would have never thought possible. Elisa is truly a fighter in more ways than one. She is a person of great courage and strength. When our family has been faced with tragedy; she has always been the one to give us faith and keep us motivated. Elisa is a kind and gentle soul who unfortunately was lead in to the wrong path. Our family is not the same without her; she is the piece of the puzzle that is currently missing. Her children and grandchildren need her support and guidance.

Thank you for your time

Sincerely,

[signature]

5/13/08

Elisa castillo is my aunt
she is avery Kind person
If I ever needed aride to
school She would give me a
ride, or if I ever wanted
a snack from avending machine
She would buy it for me.
I remember when ever I was hungry
She would always offer food
She was always willing to help
outsomeone in need.

Sincerely

Julio Aleman

To whom it may concern:

Elisa Castillo is my mother. She has been hear since 1968. She has always been a hard worker to keep food on the table and a roof over our head. We recently lost my father in November 07. She is all we have left and she wouldnt leave us.

To whom it may concern. 5.14.08

My mother Elisa Castill was born in mexico of 1955 She was raised w/ 19 other of her brothers and sisters. They later came w/ my grandparents in 1968 later she married my father Jesus Cano which is Decesed since November 9th 2007. She is a loving mother to & and a Role model to our Relatives. She has always raised us w good morals. and always been a best friend as well. She went to school @ North Garland high & Started working @ a young age in Omega Optical where she worked there since around the age of 17 and was there for 23 years and also after that she worked @ Walmart Optical My mother is wrongfully accused. She is a honest women She is also a hard working women. Our whole family who lives in Dallas Tx. My grandmother as well lives her in Dallas, and she gets along with every one. My mother has tought not only her children good morales, but has always helped anyone that she can. She would give her last dollor if someone needed it. Always to nice and would put others before herself. I always got on to her about that because alot of people take advantage of her and

She would always tell me "It's okay because God knows what's right." I mean she felt good in her mind. And my mother is very old fashion. She is a wonderful person and has always been there for all of us. She has a good Reputation, will never hurt anyone, and always bring a smile to any one that crossed her path. We as a family including Relatives are very close as we feel that she is wrongfully accused, and are willing to put property down so she can get a bond. We lost our father recently and I am taking care of my youngest brother & sister @ the moment along with my nephew. We all need her, and we Love her so much.

Love Erica Lopez Castillo.

5/14/08

To whom it may concern:

My name is Susana Hernandez. Elisa Castillo is my favorite aunt. She has been there for me. Well, I have a lots of thing to say about my Tia Elisa. Well back in [illegible] I had lost my job. I was going thru stuff time. I was going to move in with my mother but there was no room for me at her house. My mother had a full house. So I call my aunt Elisa up. I was nervous to ask her. So I finaly told her if I could move in with her and kids. She told me she had extra room for me. She also said I could stay as long as I wanted. I told her until I get back on my feet. So the next week I move in her house. My Tia Elisa work also over time to make ends meat. She work the 2nd shift. She would work at night. I would take the kids to school. It work out very good. Mi Tia need to be here for her sons and daughter

Mi Tia Elisa would help everybody out. I really miss my tia Elisa when is mated to Houston TX. She come to visit us sometimes when she hada chance. I miss her.

love your niese

[illegible signature]

To whom it may concern,

My aunt; Elisa Castillo is a very kind and thoughtful person. I have always admired and respected her sincerity and integrity. She helped raise me as a child and had a positive influence in my life. Through out my life; my aunt was a positive role model. If I ever needed anything; she was always there to lend a hand even if she did not have much herself. She is one of those people you rarely meet in life; who will literally give you the shirt off their back if you need it. Therefore, it came as a shock to me to hear that she was somehow accused of participating in such criminal activity. I have faith in her innocense and know in my heart that she will surpass this. She is very loved and has a family that needs her and can not go on without her. My aunt's thoughtless acts speak for themselves. I have a 3-yr old daughter named Makayla who is the sunshine in my life. When Makayla was a little under a year old, I was in desperate need of a child taker. The sudden and desperate need was due to a necessary change in employment. I researched many day cares, however, to my surprise all of them had waiting lists. This was not an option for me. My aunt willingly volunteered to watch over my daughter so I could work a day shift and keep my employment. Keep in mind, she herself worked the graveyard shift at her place of employment from 6 pm to 6 or 7 am. For about 4 months, she survived off of 2 to 4 hrs. of sleep a day seeing as she would take care of my daughter all day long until about 5 pm

complain, even though I could clearly see the tiredness and drowsiness in her face and eyes. Not once did she demand money as payment for the child care services she provided. I paid her what I could when ever I was able to and even then; she refused to accept money from me. She would always state that she rather see me use the money for my daughter. I will always be eternally grateful to her for this amongst many other things. my aunt was there to lend a helping hand when no one else did and when I needed it most. She is of amazing character and I am truly blessed to have her as part of my life.

Sincerely,

Melissa Aleman

Melissa Aleman
10818 Channel Dr.
Dallas, TX 75229
(469)396-3943

5/14/08

YO SOY MARIA. CASTILLO
Y ELISA CASTILLO ES MY
HERMANA MENOR QUE YO
Y PASAMOS PARA A. ~~K~~A A
A LOS ESTADOS UNIDOS EN
EL AÑO 1968 Y EL MES
JULIO-22 Y RESPETO A
ELISA ELLA SIEMPRE A SIDO
MUY TRAVAJADORA Y COMEN
SO A TRAVAJAR MUY CHIQUITA
DE 15 AÑOS DE EDAD. EN
EL CHICO CORPORECHON
FUE EL PRIMER TRAVAJO
QUE TUVIMOS CON MY PAPA
Y SILVIA Y BETO Y ELISA
DESPUES TRAVAJO EN EL
FINEX CORPORECHON Y LUEGO
TRAVAJO EN LA OMEGA. OPTIKA
POR 23 ANOS Y TANVIEN
TRAVAJO EN LA WALMART
OPTIKA DONDE ASEN. LENTES
Y DE AI SE FUE A GUSTON
EN EL AÑO 2006 Y SIEMPRE
TODOS SOMAOS MUY UNIDOS
Y TODA LA FAMILIA ESTA A
QUY EN DALLAS Y AORA
QUE ELISA SE FUE A
JUSTON NOS AVLAMOS
POR TELEFONO Y TAMVIEN
NOS VISITAMOS

A quien Corresponda, May 14, 2008

Yo soy Sylvia Aleman y Elisa Castillo es mi hermana venimos de Mexico en Julio de 1968. Elisa tan Pronto llegó Septiembre Comenzó a ir a la escuela, aligual que mis hermanos mas pequenos. Paso el tiempo y empezó a trabajar para ayudar a mis padres por que ella Siempre ha sido una persona muy responsable y cooperadora. Trabajo en la omega Optical por 23 año's y en la Walmart Optical 3años, Pero aproximadamente 2 años decidio moverse para Houston, Tx. Yo la he extrañado mucho, proque de todas mis hermana's ella ha sido con la que mejor me he llevado, yo la admiro mucho y nos respetamos mucho los dos.

Siempre Cuando tengo un problemas no dudo en acudir a ella porque yo se que ella no me va a decir que no. Pues ella Siempre tiene soluciones para todo. Es una persona digna de Confianza en la que cualquier persona puede Confiar. Recuerdo una anecdota que nunca se me

olvidara. Cuando a una vez que fuimos a mexico mis papas y yo; ella no fue y Cuando llegamos de Mexico mama andaba buscando una Colcha que no encontraba y le pregunto a ella si Sabia y ella Contesto "es que vino una Señora que acaba d llegar de Mexico y no tenian nada y se la di", y mi mama dijo enojada que era la Colcha que acababa de Comprar, Como Comprenderan ella. Siempre ha sido una persona muy amable, muy generosa y Cariñosa y yo no dudaria en recomendarla a quien fuera porque es una gran persona yo y mi familia la queremos mucho y la necesitamos al igual que mi mama y sus hijos Espero que mis palabras no se las lleve el viento y las tomen en Consideracion.

Agradeciendo de antemano su atencion despido atte

Sofia Aleman

To whom it may CONCERN

Elisa I. Castillo is my mother. she is a very Nice and caring person. She has always put other before her. When we would buy take out food for us and someone would visit she would offer her plate and pretend she wasnt hungry just so that the person visiting would eat even if she didnt know them. She always trys to help whenever she can. She is to nice and sometimes lot of people would take advantage of her kindness. My mother is an honest person. She has Never been in trouble. She has been here since she was a teen. She didnt finish school because she had to work to help her family she worked at this one place for about 23 years called omega optical. We had a house in dallas Tx were we lived since I was in second grade think 1992. We lived there for a long time think Like 2003 then we had to move out. My Mom has always worked hard all her life. At one point She was working 2 Jobs only getting about 3 or 4 hours of sleep a day. We recently lost my Dad in November 9, 2007. That

was really hard on us. My mother
is all we have left she wouldnt
leave us for the world. She has
always helped me and my son out.
We have gone threw alot and she
has always been there to make us
feel better. She is the greatest person
if you get a chance to know her.
Every one that knows her would
tell you the same. I am the youngest
girl of ~~the~~ her 4 children. And we
all need her.

Nidia Cano

05/13/08

A Quien Corresponda

La Sra Elisa Castillo es Hermana de mi Espoza Gloria Escobar Estoy Sorprendido De lo que mi Espoza me comento De la Situacion de Elisa,
Elisa a trabajado toda su vida a luchado mucho por sus hijos Desafortunadamente las parejas que a escojido nunca an sido personas responsables Elisa a trabajado Dia y tarde por temporadas para sacar adelante a la familia por eso les pido por favor le Ayuden a enclarecer este problema por ella y por sus hijos que estan sufriendo por la ausencia de su madre y lo que an sufrido en el pasado Gracias por su Atencion y Gracias.

J. Escobar

To whom it may concern:

Elisa Castillo is my sister. She is a caring mother of four children. She worked at Omega Optical for 23 years. She is needed in our life, she helps take care of her 83 y/o mother. She has always been a great help to the family. She has lived in the U.S. since 1968. I hope you take letter into consideration as her family misses and cares for her very much. She is greatly needed in this family.

Gloria Escobar

5/13/08

To whom it may Concern:

Elisa Castillo is my aunt. She has always been a part of my life and has shown me many things. She has always been there for me and the family. She cares for my 83yo grandmother which misses and needs her very much. I hope you take this letter into consideration, her family and grandkids need her

Mirella Escobar