United States District Court
Southern District of Texas
**ENTERED**
May 29, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NUMBER H-08-146-01 |
| ELISA IDALIA CASTILLO | § § § | |

## MEMORANDUM OPINION AND ORDER

In a Judgment in a Criminal Case entered on May 29, 2009, the court sentenced the defendant, Elisa Idalia Castillo (Register No. 67003-179), to concurrent terms of life imprisonment for conspiracy to possess with intent to distribute cocaine (count one) and 240 months' imprisonment for conspiracy to commit money laundering (count two) (Docket Entry No. 144, pp. 1-2). Now pending are Ms. Castillo's Time-Sensitive Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Defendant's Motion") (Docket Entry No. 321); the Government's Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Government's Response") (Docket Entry No. 322); and Ms. Castillo's Update to Time Sensitive Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Defendant's Update") (Docket Entry No. 323). After carefully considering the record and the applicable law, the court will grant Defendant's Motion for the reasons explained below.

## I. **Background**

Ms. Castillo, who was 53 years of age at the time she was sentenced in 2009,[1] has now served 12 years of the life sentence that she received for a drug-trafficking offense which, while serious, did not involve a crime of violence.[2] Although she was deemed an organizer for purposes of sentencing,[3] her role consisted of operating a charter bus service for tourists that was used by other co-defendants, including her paramour Martin Ovalle-Martinez, to conceal cocaine and drug proceeds trafficked between Mexico and Houston.[4] Ms. Castillo, a grandmother who is now nearly 65 years of age, has no other criminal history.[5]

At the time she was sentenced in 2009, Ms. Castillo disclosed that she suffers from "diabetes and heart issues," which require medication.[6] While incarcerated, she has been treated for several serious medical conditions exacerbated by her age, including diabetes, hypertension, high cholesterol, and glaucoma.[7] As a

---

[1] See Presentence Investigation Report ("PSR"), Docket Entry No. 115, p. 2.

[2] See id. at 5-10.

[3] See id. at 12.

[4] See id. at 5-10.

[5] See id. at 13-14.

[6] See id. at 14-15.

[7] See Defendant's Motion, Docket Entry No. 321, pp. 4-5.

result of her ailments, Ms. Castillo is currently confined at the Carswell Federal Medical Center ("FMC-Carswell"), which is a hospital facility for female prisoners located in Fort Worth, where her condition is described as "unstable" and requiring "complex chronic care."[8]

Hypertension and diabetes are among the conditions identified by the Centers for Disease Control and Prevention as posing an increased risk of severe illness or mortality as a consequence of the highly contagious novel coronavirus or COVID-19, particularly for persons 65 years of age and over who are living in an institutionalized setting, such as a nursing home or long-term care facility.[9]  As COVID-19 cases have spread within the prison system,[10] FMC-Carswell recently reported two active cases and one prisoner has died as a result of the virus.[11]  Noting that she is nearly 65 years of age, Ms. Castillo now seeks a reduction in her

---

[8] Individualized Reentry Plan - Program Review, Exhibit 1 to Defendant's Motion, Docket Entry No. 321-3, p. 4.

[9] See People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (March 26, 2020), located at: https://www.cdc.gov/coronavirus (last visited May 26, 2020).

[10] See Kimberly Kindy, et al., "Disaster Waiting to Happen": Thousands of Inmates Released as Jails and Prisons Face Coronavirus Threat, Washington Post, 2020 WLNR 8660835 (Mar. 25, 2020).

[11] See Mike Wilson, 3 Deaths and Rampant Infections at a Fort Worth Lockup Are Fueling Criticism of How Federal Prisons Are Handling the Pandemic, Dallas Morning News, 2020 WLNR 12159050 (April 30, 2020) (discussing cases and deaths reported at both FMC-Carswell and the nearby FMC-Fort Worth, where an outbreak of COVID-19 has spread rapidly through the population of male prisoners).

sentence in the form of compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i), citing her vulnerability to severe health risks posed by the COVID-19 pandemic.[12]

## II. **Discussion**

A district court is authorized to modify a term of imprisonment by granting compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239-41 (Dec. 21, 2018), upon motion of the Director of the Bureau of Prisons "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," if the court finds that "extraordinary and compelling reasons" warrant a modification. 18 U.S.C. § 3582(c)(1)(A)(i).

Any reduction under this provision must comply with the applicable policy statement articulated by the United States Sentencing Commission. See U.S. Sentencing Guidelines ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2018) (reflecting the applicable policy statement on reductions to a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)). If extraordinary and compelling reasons

---

[12]Defendant's Motion, Docket Entry No. 321, pp. 13-20.

are found to exist, the policy statement found in U.S.S.G. § 1B1.13(2) authorizes early release if the court finds that the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." Decisions about whether to grant or deny a request for compassionate release under § 3582(c)(1)(A) are discretionary, depending on the court's consideration of the applicable policy statement and other factors found in 18 U.S.C. § 3553(a). See United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

**A.   Exhaustion**

As outlined above, a court may consider a defendant's motion for modification of a term of imprisonment only after (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The government argues that relief must be denied for lack of exhaustion because Ms. Castillo did not comply with either statutory requirement before filing her motion.[13]

The record reflects that Ms. Castillo filed a compassionate release request with the Warden at FMC-Carswell on April 16, 2020,

---

[13]Government's Response, Docket Entry No. 322, p. 3.

before she submitted the pending motion five days later on April 21.[14]  Although Ms. Castillo did not wait for the Warden to respond before filing her motion, more than thirty days have now lapsed since the date she submitted her request to the Warden. Thus, it appears that the court has jurisdiction to consider the motion.  See, e.g., United States v. Mazur, — F. Supp. 3d —, 2020 WL 2113613, at *2-3 (E.D. La. May 4, 2020) (noting that the court had jurisdiction even though the defendant had not exhausted administrative remedies where "more than thirty days have elapsed since the warden received his request for relief").

To the extent that the government would require Ms. Castillo to re-file her motion after exhausting any appeals process, the court notes that the Warden has since denied Ms. Castillo's request in a memorandum dated May 5, 2020, acknowledging that she has "multiple medical issues," but finding that she was not eligible for relief because she is not yet 65 years of age and has not yet served 50% of her sentence as required by Bureau of Prisons' Program Statement 5050.50.[15]  The letter overlooks the fact that Ms. Castillo will turn 65 in less than two months and that she is serving a term of life imprisonment, which makes it impossible to reach 50% of her sentence.  The letter also makes no mention of her concerns about COVID-19.

---

[14]Defendant's Motion, Docket Entry No. 321, p. 4.

[15]See Memorandum from Warden M. Carr, Exhibit 2 to Defendant's Update, Docket Entry No. 323-2, p. 1.

In view of the "enormous and imminent health risks for prisoners and correctional officers alike," at least one member of the Fifth Circuit has noted recently that the exhaustion requirement for motions filed under the First Step Act can be waived by the court "in the unique circumstances of the COVID-19 pandemic." Valentine v. Collier, 956 F.3d F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring) (citations omitted). Several other courts have waived exhaustion for a defendant with health conditions similar to Ms. Castillo's, including diabetes and hypertension, due to the increased health risks posed by the COVID-19 pandemic. See Samy v. United States, — F. Supp. 3d —, 2020 WL 1888842, at *3 (E.D. Mich. April 16, 2020) (waiving exhaustion and concluding that delay would unduly prejudice the defendant, whose medical condition required "immediate judicial review" in light of the COVID-19 pandemic); United States v. Reddy, — F. Supp. 3d —, 2020 WL 2320093, at *5 (E.D. Mich. May 11, 2020) (concluding that it would unduly prejudice the defendant to require strict exhaustion, given that the combination of her underlying illnesses, including diabetes and hypertension, placed her "at risk of suffering dire medical consequences if she contracts COVID-19"); see also United States v. Pinkerton, — F. Supp. 3d —, 2020 WL 2083968, at *5 (C.D. Ill. April 30, 2020) (excusing the defendant's failure to wait 30 days to file her motion for compassionate release under § 3582(c)(1)(A) where she made a "credible claim of serious and imminent harm from this pandemic,"

while noting that the decision whether to waive the 30-day requirement must be made "on a case-by-case basis").

Because of the unique circumstances presented by the COVID-19 pandemic and the severe risk posed to Ms. Castillo due to her age and serious medical issues, the court will waive further exhaustion and rule on the motion.

**B.   Extraordinary and Compelling Reasons Exist**

The applicable policy statement from the Sentencing Commission, found in comments to U.S.S.G. § 1B1.13, reflects that early release is available for defendants as the result of a motion by the Director of the Bureau of Prisons ("BOP") under 18 U.S.C. § 3582(c)(1)(A), provided that they meet one of the following criteria:

- (A)  The defendant is suffering from "terminal illness" or a serious physical or mental health condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

- (B)  The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

- (C)  Family circumstances such as the "death or incapacitation" of the caregiver for the defendant's child or where the defendant would be the only caregiver for an incapacitated spouse or registered partner.

U.S.S.G. § 1B1.13, cmt. n.1(A)-(C).  There is also a fourth provision that gives the BOP Director the authority to determine if

a sentence reduction is appropriate because "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other categories. Id. cmt. n.1(D).

The policy statement found at U.S.S.G. § 1B1.13 has not been updated since the First Step Act was enacted in late 2018.[16] Because prisoners can now petition the court directly for a reduction in sentence under the First Step Act, without waiting for a motion filed on their behalf by the BOP, courts have concluded that the policy statement may continue to serve as "helpful guidance," but does not "constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." United States v. Rodriguez, — F. Supp. 3d —, 2020 WL 1627331, at *4 (E.D. Pa. April 1, 2020) (collecting cases); see also United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision [found at § 3852(c)(1)(A)], the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

---

[16]See United States v. Cantu-Rivera, Cr. No. H-89-204, 2019 WL 2578272, at *2, n.1 (S.D. Tex. 2019) (observing that "the current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members of the Sentencing Commission").

The court finds that Ms. Castillo does not fit within the criteria found in U.S.S.G. § 1B1.13, cmt. n.1(A) or (C), but notes that she is just months shy of qualifying under § 1B1.13, cmt. n.1(B) due to her age, chronic health issues, and length of her incarceration in excess of ten years.

The court concludes further that she meets the requirements of U.S.S.G. § 1B1.13, cmt. n.1(D), which permits a reduction in sentence when "there exists in defendant's case an extraordinary and compelling reason other than, or in combination with" the remaining considerations found in the policy statement. In making this determination, the court notes that Ms. Castillo has been an exemplary prisoner, having completed nearly 100 rehabilitative programs without any record of disciplinary infractions during the 12 years she has been incarcerated.[17] More importantly, the court notes that in addition to her age, she suffers from serious medical issues that have resulted in her assignment to FMC-Carswell and which place her at a heightened risk for severe illness or death if she were to contract COVID-19.

---

[17] Individualized Reentry Plan - Program Review, Exhibit 1 to Defendant's Motion, Docket Entry No. 321-3, pp. 2-4. The court does not consider Ms. Castillo's rehabilitation, by itself, as sufficient to constitute an extraordinary and compelling reason for a reduction in sentence. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3. Rather, the court considers rehabilitation in combination with the other factors to constitute, in their entirety, the requisite extraordinary and compelling reasons. See Pepper v. United States, 562 U.S. 476, 490-91 (2011) ("[E]vidence of post-sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").

The government, which does not dispute the seriousness of the risk posed by COVID-19 to vulnerable inmates within the prison system, opposes the reduction in sentence by pointing to the measures undertaken by the BOP to protect inmates.[18] Nevertheless, it is apparent that cases of COVID-19 have spread rapidly through the federal prison system, including FMC-Carswell where the defendant is located,[19] despite the BOP's commendable efforts to stop the virus from spreading.[20]  Thus, the court finds that the combination of factors in this case establish the requisite extraordinary and compelling reasons to warrant a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  It should be noted, however, that the court's determination in this case is narrow and limited based on Ms. Castillo's characteristics as an exemplary prisoner, whom the court has already recommended for a reduction in sentence,[21] and the unique threat posed by the COVID-19 pandemic.

---

[18]Government's Response, Docket Entry No. 322, pp. 16-18.

[19]See Mark Dent, et al., Sick, Elderly, and Fearing Coronavirus:  Life Inside Fort Worth's Women's Federal Prison, Fort Worth Star-Telegram, 2020 WLNR 11182314 (April 20, 2020) (describing the conditions of confinement at FMC-Carswell).

[20]See Mike Wilson, 3 Deaths and Rampant Infections at a Fort Worth Lockup Are Fueling Criticism of How Federal Prisons Are Handling the Pandemic, Dallas Morning News, 2020 WLNR 12159050 (April 30, 2020).

[21]See Letter dated November 12, 2019, Exhibit 2 to Defendant's Motion, Docket Entry No. 321-4, p. 2 (supporting Ms. Castillo's previous petition for a reduction in her sentence).

**C.   Safety and Sentencing Factors Support Compassionate Release**

Ms. Castillo does not present a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The record reflects that Ms. Castillo is a mother and a grandmother with extensive ties to the community and support from her family members.[22] If released she plans to reside with her children, who live near Dallas.[23] Although she was convicted of a serious offense, the evidence of rehabilitation during the 12-year period of her incarceration, the close ties that she has maintained with family, and the limitations that age now place on her, all convince this court that Ms. Castillo presents no danger upon release.

Finally, the court has considered the factors set out in 18 U.S.C. § 3553(a). The court concludes that, in light of the circumstances set forth above, a sentence of time served, representing 12 years or 144 months in prison, adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A). This sentence will also avoid unwarranted disparities among defendants convicted of similar conduct in this same case because, with the exception of Martin Ovalle-Martinez, the 12-year sentence that Ms. Castillo has

---

[22]See Letter from the defendant's daughter, dated April 20, 2020, Docket Entry No. 321-5, p. 2.

[23]See id.; see also Defendant's Motion, Docket Entry No. 321, p. 17.

-12-

served far exceeds the sentences imposed on other members of the drug-trafficking conspiracy. 18 U.S.C. § 3553(a)(6). Consistent with the conclusion that Ms. Castillo does not represent a danger to any person or the community, the court concludes that this sentence has served and continues to serve as adequate deterrence and to protect the public from further crimes by this defendant, which, given Ms. Castillo's age and rehabilitation, this court expects will not occur. 18 U.S.C. § 3553(a)(2)(B), ©. Therefore, the court will grant Ms. Castillo's motion under 18 U.S.C. § 3582(c)(1)(A)(i) and will reduce her sentence of imprisonment to time served.

## II. Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1. Ms. Castillo's Time-Sensitive Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Docket Entry No. 321) is **GRANTED**.

2. The court **MODIFIES** the term of imprisonment on Counts 1 and 2 to a period of **TIME SERVED,** with all other terms of sentence as originally imposed in the Judgment in a Criminal Case, dated May 29, 2019 (Docket Entry No. 144), to remain unchanged.

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 28th day of May, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE